**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **VALDA T. JOHNSON, *et al.*,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 03-2513 (ESH)** |
| ) | |
| **DAVID HOLWAY, *et al.*,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**MEMORANDUM OPINION**

This matter is before the Court on review of the costs taxed by the Clerk of Court on

August 1, 2007.  All parties seek to have costs retaxed pursuant to Federal Rule of Civil

Procedure 54(d)(1) and Local Civil Rule 54.1(e), and plaintiff Valda Johnson has also moved for

a new trial.  As set forth herein, the Court will grant in part and deny in part the plaintiffs'

motions to retax, deny defendants' cross-motion to retax, and deny Johnson's motion for a new

trial.

**BACKGROUND**

Following a bench trial in April 2006, the Court issued findings of fact and conclusions of

law and entered judgment in favor of defendants and against plaintiffs.  As the prevailing party,

defendants thereafter submitted a bill of costs seeking to recover a total of $23,278.84 in docket

fees, transcript and exhibit costs, other copying costs, and witness travel and subsistence costs.[1]

---

[1]Defendants submitted their bill of costs on August 10, 2006, twenty days after judgment
was entered, and the bill of costs was therefore timely under Local Civil Rule 54.1(a), despite
plaintiff Johnson's argument to the contrary.  LCvR 54.1(a) ("A bill of costs must be filed within
20 days after entry of judgment terminating the case as to the party seeking costs . . .").

(*See* Defs.' Bill of Taxable Costs Pursuant to Fed. R. Civ. P. 54(d)(1).)  Plaintiffs opposed

defendants' bill of costs, and defendants later reduced their request to $21,165.36.  (*See* Defs.'

Reply in Support of Bill of Taxable Costs at 22.)

On August 1, 2007, the Clerk of Court taxed costs against plaintiffs in the amount of

$18,251.90, denying reimbursement for approximately $3,000 of the expenses claimed by

defendants.  (Dkt. #175.)  On August 8, 2007, both plaintiffs filed motions to retax, urging the

Court to exercise its discretion to deny defendants' bill of costs in its entirety or, in the

alternative, to limit defendants' recovery to $8,665.34, and plaintiff Johnson also moved for a

new trial.  Defendants opposed plaintiffs' motions and filed a cross-motion to retax, seeking

reimbursement for certain costs that the Clerk had disallowed.

## ANALYSIS

### I.      Motions to Retax

#### A.      Legal Standard

Taxation of costs against the non-prevailing party is authorized by Rule 54(d), which

provides that "[e]xcept when express provision therefor is made either in a statute of the United

States or in these rules, costs other than attorneys' fees shall be allowed as of course to the

prevailing party unless the court otherwise directs . . . ."  Fed. Rule Civ. P. 54(d)(1).  The

categories of allowable costs are set forth in 28 U.S.C. § 1920.  *See Crawford Fitting Co. v. J.T.*

*Gibbons, Inc.*, 482 U.S. 437, 441-42.  Although Rule 54(d) grants the Court discretion "to

decline to tax, as costs, the items enumerated in § 1920," the Court may not tax costs above and

beyond those listed in the statute.  *Id.*  Local Civil Rule 54.1 provides additional guidance in this

judicial district, setting forth a more specific list of costs that the Clerk "shall tax" if "requested

to do so in the bill of costs."  *See* LCvR 54.1(d).  Costs taxed by the Clerk are subject to review

by the Court, which may, "for good cause shown[,] . . . tax additional costs or . . . deny costs

allowed by the Clerk pursuant to [LCvR 54.1(d)]."  LCvR 54.1(e); *see also* Fed. R. Civ. P.

54(d)(1) ("On motion served within 5 days [after costs are taxed by the clerk], the action of the

clerk may be reviewed by the court.").

### B.       Plaintiffs' Request That All Costs Be Denied

Rule 54(d) embodies a strong presumption that the prevailing party "is normally entitled

to costs in the district court as a matter of course . . . ."  *Baez v. U.S. Dep't of Justice*, 684 F.2d

999, 1004 (D.C. Cir. 1982) (en banc); *Sun Ship, Inc. v. Lehman*, 655 F.2d 1311, 1317 (D.C. Cir.

1981).  The Rule, as noted, "generally grants a federal court discretion to refuse to tax costs in

favor of the prevailing party," *Crawford Fitting Co.*, 482 U.S. at 442; however, the Court "may

neither deny nor reduce a prevailing party's request for costs without first articulating some good

reason for doing so."  *Baez*, 684 F.2d at 1004.  As the D.C. Circuit has observed, "[t]he result is

that trial judges have rarely denied costs to a prevailing party whose conduct has not been

vexatious when the losing party has been capable of paying such costs."  *Id.*

Plaintiffs argue that the Court should exercise its discretion to deny all costs because

certain post-judgment conduct by defendant National Association of Government Employees

("NAGE") shows that defendants misrepresented their motivation for imposing a trusteeship on

the Pension Benefit Guaranty Corporation ("PBGC") bargaining unit at trial.  (Pls.' Mem. at 4-5;

Pl. Johnson's Opp'n to Defs.' Bill of Taxable Costs and Mot. for New Trial ["Johnson Mem."]

at 2.)  In particular, plaintiffs note that in May 2007, NAGE filed a petition with the FLRA

disclaiming all interest in the PBGC bargaining unit and requesting that the FLRA rescind

NAGE's certification as the exclusive representative of PBGC bargaining unit employees.

Observing that NAGE took this action just one month after the local union had elected a new

president who had publicly expressed her appreciation towards plaintiffs, plaintiffs argue that the

filing of the petition shows that defendants "were never really concerned about the interests of

the employees who the Defendants had a duty to serve" and that defendant David Holway's

representation at trial that the decision to impose a trusteeship was motivated by his fiduciary

responsibility to the union and its members was false.  (Pls.' Mem. at 4-5; Pls.' Reply at 1-2;

Johnson Mem. at 2.)

       The Court cannot agree.  NAGE's request to terminate its relationship with the PBGC

bargaining unit was filed in May 2007, some three and a half years after the trusteeship was

imposed and more than a year after the trial in this case took place.  The Court cannot say that

NAGE's post-judgment conduct shows that Holway's earlier testimony was false or that

defendants proceeded in the litigation in bad faith, and it certainly cannot conclude that plaintiffs

have made the kind of showing necessary to overcome the presumption favoring an award of

costs to the prevailing party.  *See Baez*, 684 F.2d at 1004 (noting that federal courts "have placed

on the unsuccessful parties some burden of showing circumstances sufficient to overcome the

presumption favoring the prevailing party").

       Plaintiff Johnson also argues that imposition of costs would cause an "undue financial

burden," asserting that defendants are seeking costs in retaliation for her objection to plaintiffs'

witnesses' trial testimony and for her continued pursuit of her claims against PBGC.  (Johnson

Mem. at 1-2, 4; Pl. Johnson's Opp'n to Defs.' Bill of Taxable Costs and Mot. to Retax Billable

Costs ["Johnson Reply"] at 1, 3.)  Such unsubstantiated assertions of financial hardship and

retaliatory motive, however, are an insufficient basis on which to deny costs.[2]  *See Chapman v.*

*Al Transport*, 229 F.3d 1012, 1039 (11th Cir. 2000) (court may consider non-prevailing party's

financial status in awarding costs but should require "substantial documentation of a true

inability to pay"); *Williams v. The Thresholds, Inc.*, No. 02-9101, 2003 WL 22478784, at *1

(N.D. Ill. Oct. 31, 2003) ("Actual indigence, not just limited financial resources, must be

demonstrated in order to overcome the strong presumption favoring an award of costs."); *Greene*

*v. Fraternal Order of Police*, 183 F.R.D. 445, 449 (E.D. Pa. 1998) (counsel's unsubstantiated

statement that non-prevailing parties lacked the resources to pay costs was "insufficient to

overcome the strong presumption that the losing party must pay costs"); *cf. White & White, Inc.*

*v. Am. Hosp. Supply Corp.*, 786 F.2d 728, 731 (6th Cir. 1986) (litigant's ability to pay is not a

valid criterion in assessing costs).

### C.    Deposition and Trial Transcripts

In the bill of costs they submitted to the Clerk, defendants sought $8,307.56 for costs

associated with deposition transcripts for nine witnesses and trial transcripts.  The Clerk awarded

defendants most of this amount, disallowing only the amounts billed by the court reporting

company for "condensed transcript/media/delivery."  (Dkt. # 175.)  In response, plaintiffs raise a

host of arguments as to why these transcript costs or some portion of them should be denied,

while defendants contend that the amounts awarded by Clerk were properly allowed and that the

charges disallowed by the Clerk should be included in the award as well.

---

[2]Johnson notes that the Clerk of Court's decision regarding costs was issued two days after her first mediation date with a *pro se* attorney (Johnson Mem. at 2), but the timing of the Clerk's action on defendants' bill of costs in relation to events in plaintiff's court case is not probative of defendants' motivation in seeking the costs almost a year earlier.

### 1.       Deposition Transcripts

It is clear that costs associated with deposition transcripts are allowable in some instances under 28 U.S.C. § 1920 and Local Civil Rule 54.1(d).  Section 1920 permits the taxation of "[f]ees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case."  28 U.S.C. § 1920(2).  The Local Rule, in turn, directs the Clerk to tax "the cost, at the reporter's standard rate, of the original and one copy of any deposition noticed by the prevailing party, and of one copy of any deposition noticed by any other party, if the deposition was used on the record, at a hearing or trial."  LCvR 54.1(d)(6).

Plaintiffs object to the deposition costs allowed by the Clerk on four main grounds.[3] Plaintiffs object that costs should not have been allowed (1) for those depositions not used at trial; (2) for deposition exhibits; (3) to the extent that the rates charged by the reporting company exceeded its standard rate, which plaintiffs contend was $2.75 per page; and (4) to the extent that the rates charged were for delivery in five business days, which plaintiffs contend amounted to expedited rather than standard delivery.  Defendants, in turn, object that the amounts disallowed by the Clerk - - charges by the reporting company for "condensed transcript/media/delivery" - -

---

[3]Plaintiffs also argue that costs for five of the depositions (Holway, Barry, Pooler-Johnson, Lightfoot-Walker, and Wasserstein) should be denied because plaintiffs were forced to depose these individuals only as a result of defendants' lack of good faith in the discovery process.  (Pls.' Mot. at 8-9.)  In particular, plaintiffs note that defendants "refused to provide detailed responses to several interrogatories on the ground that the Plaintiffs could obtain such information in depositions" and failed to preserve and produce internal email messages.  (*Id.*) Although plaintiffs assert that the conduct by defendants that made these depositions necessary was sanctionable (Pls.' Reply at 4-6), defendants were never sanctioned, and the Court declines to revisit the issue at this late date.  Because plaintiffs have failed to overcome the strong presumption that any otherwise allowable costs associated with these depositions should be awarded, *see Baez*, 684 F.2d at 1004, the Court is not persuaded to exercise its discretion to deny these costs.

should have been awarded.

Plaintiffs' assertion that only those depositions used at trial are properly taxable is incorrect.  Under § 1920, the question is whether the deposition was "necessarily obtained for use in the case," 28 U.S.C. § 1920(2), and this determination is to be made as of the time the deposition was taken rather than at the time of the trial.  *See, e.g.*, *Mother & Father v. Cassidy*, 338 F.3d 704, 712 (7th Cir. 2003) (determination of necessity under 28 U.S.C. § 1920(2) "must be made in light of the facts known at the time of the deposition, without regard to intervening developments that render the deposition unneeded for further use"); *Oetiker v. Jurid Werke, GmbH*, 104 F.R.D. 389, 394 (D.D.C. 1982) ("Expenses of discovery depositions shown to be reasonably necessary at the time taken are recoverable as costs even if the deposition is not used at trial.").  Moreover, Local Civil Rule 54.1 makes clear that depositions used in the parties' summary judgment papers are taxable.  Earlier versions of the Rule were accompanied by a comment specifying that "insertion of the comma . . . after the word 'record' [in the phrase 'used on the record, at a hearing or trial] clarifies that the costs of depositions used in support of motions or pleadings may be taxed as well as depositions used at trial or hearings."  LCvR 54.1, cmt. (2000).  As plaintiffs note, this comment no longer accompanies the text of the Rule, LCvR 54.1 (2007); however, the comma referred to therein has persisted, and there is no reason to believe that its purpose has changed.  *See OAO Alfa Bank v. Center for Pub. Integrity*, No. 00-2208, 2006 WL 1313309, at *4 (D.D.C. May 12, 2006) (awarding costs for depositions relied on in declarations submitted in support of summary judgment briefing).

Defendants assert, and plaintiffs do not dispute, that all but one of the depositions that were not used at trial were used in the summary judgment proceedings; hence, the costs of these

depositions are properly taxable under Local Civil Rule 54.1(d)(6).  The one deposition that the

parties agree was not used either at trial or in the summary judgment briefing is that of Elizabeth

Baker, a plaintiff in the case whose claims were ultimately dismissed on summary judgment.[4]

Defendants contend that because Baker was a plaintiff asserting discrimination claims against

them based on her own personal experiences, it was essential for them to take her deposition in

order to be able to defend against her claims, even though they ultimately argued that she did not

have any valid claim.  (Defs.' Opp'n at 9 & n.7.)  In light of this assertion, the Court cannot agree

with plaintiffs that the deposition was irrelevant (Pls.' Mot. at 10), and the Court therefore finds

that the costs of Baker's deposition are also properly taxable.  *See Oetiker*, 104 F.R.D. at 395

(noting that the taking of the plaintiff's deposition "could hardly be characterized as the kind of

'mer[e] fishing expedition' for which taxing of costs is prohibited under Section 1920").

Plaintiffs' assertion that deposition exhibits are not allowable is also incorrect.  Exhibits

attached to a deposition "are essential to the deposition transcript" and are therefore recoverable

as part of the cost of the deposition.  *OAO Alfa Bank*, 2006 WL 1313309, at *4.

In response to plaintiffs' objection that certain depositions were charged at per page rates

in excess of the reporting company's standard rates and included charges for expedited delivery,

defendants have produced a letter from the reporting company setting forth the standard rates and

delivery times for 2005.  (*See* Defs.' Cross-Mot., Ex. 2; Decl. of Att'y Abigail V. Carter in Supp.

of Defs.' Reply ["Carter Decl."], Attach. 1.)  The letter reflects that the standard rate charged for

---

[4]The parties do not indicate whether Susanne Pooler-Johnson's deposition transcript was used either at trial or in the summary judgment briefing; however, plaintiffs do not challenge the taxation of costs for this deposition on this basis.  Rather, plaintiffs object that allowing costs for the deposition would be inequitable for the reasons set forth in footnote 3, *supra*.  (Pls.' Mot. at 8-9, 16 n.4.)

depositions in the Washington, D.C. area was $3.95 per page for the "taking/scheduling attorney"

and $2.75 per page for "defending counsel"; that the standard rate charged for depositions

outside the D.C. area was $6.50 per page for the "taking/scheduling attorney" and $3.25 per page

for "defending counsel"; and that the standard delivery time in 2005 was five business days.

(Defs.' Cross-Mot., Ex. 2; Carter Decl., Attach. 1.)  The information provided by the reporting

company refutes plaintiffs' assertion that defendants are seeking reimbursement for charges in

excess of the company's standard rates.[5]

The reporting company's letter also indicates that in 2005, the company billed its $55.00

processing fee as a fee for "condensed transcript/media/delivery."  Conceding that "extra or

special transcript services" are not reimbursable, defendants argue that because the $55.00 fee

was a standard administrative fee associated with every transcript, it is allowable.  (Defs.' Cross-

Mot. at 10.)  Administrative fees, like delivery costs, "are . . . considered ordinary business

expenses that cannot be recovered as costs." *Williams*, 2003 WL 22478784, at *2.  Accordingly,

the Court finds that the $55.00 fee - - which was charged for three of the depositions (Baker,

Bernson, and Johnson) - - is not recoverable and was properly disallowed.  The Court therefore

finds that defendants are entitled to a total of $5,484.90 in deposition transcript costs.

### 2. Trial Transcripts

Plaintiff Johnson argues that the costs of the trial transcripts should not have been taxed

because plaintiffs did not learn until the fifth day of trial, rather than at the outset, that they would

---

[5]Plaintiffs suggest that a five business day turnaround time constituted expedited delivery, citing to a 2004 invoice showing a cheaper rate for ten business day delivery. (Pls.' Reply at 7 & Ex. C.)  According to the court reporting company, however, five, not ten, business day delivery was standard in 2005. (Defs.' Cross-Mot., Ex. 2; Carter Decl., Attach. 1.)

have to brief the case and that the transcripts would therefore be necessary.  (Johnson Mem. at 4.)

As noted, court reporter fees are taxable under § 1920 "for all or any part of the stenographic

transcript necessarily obtained for use in the case."  28 U.S.C. § 1920(2).  In addition, Local Civil

Rule 54.1 provides that trial transcripts are taxable if they were "required by the court to be

transcribed."  LCvR 54.1(d)(7).  There is no requirement that the parties be provided some kind

of advance notice of the need for transcripts.  Given that the Court ordered the parties to submit

proposed findings of fact and conclusions of law following trial and set a briefing schedule based

on the date the transcripts would be available (Defs.' Cross-Mot. at 13-14 & Ex. 3), it is clear

that the transcripts were "necessarily obtained for use in the case" and that the Court in effect

required them to be prepared, and the trial transcript costs incurred by defendants thus were

properly allowed.  Accordingly, the Court finds that defendants are entitled to $2,657.66 in trial

transcript costs.

> **D.     Exhibits**

The costs taxed by the Clerk include $1,896.04 in copying costs associated with (1) the

exhibits to pleadings filed by defendants during the litigation, (2) pre-trial exhibits filed with the

Court, and (3) trial exhibits.[6]  Such costs are recoverable under § 1920 so long as the copies are

of "papers necessarily obtained for use in the case."  28 U.S.C. § 1920(4).  Local Civil Rule 54.1

permits copying costs for "those exhibits which are introduced into evidence, are used for

impeachment, or are filed with the Clerk."  LCvR 54.1(d)(8).

With respect to exhibits to pleadings, defendants sought, and the Clerk allowed,

---

[6]Defendants also sought, and were awarded, $300 in "other copying costs."  Plaintiffs do not challenge defendants' entitlement to this amount.  *See* LCvR 54.1(d)(9) (authorizing taxation of "other costs of copying up to $300.00").

reimbursement for the cost of scanning the 463 pages of exhibits that were attached to

defendants' pleadings throughout the litigation.  Although defendants initially sought to recover

the in-house costs associated with scanning these exhibits, which were filed electronically, at a

rate of $0.25 per page, defendants later acknowledged that the appropriate rate is the $0.12 per

page that would have been charged by their outside vendor.  (*See* Defs.' Cross-Mot. at 14.)

Plaintiffs object that these copying costs are not recoverable because the exhibits were generated

pre-trial and were not filed as hard copies (Pls.' Mot. at 18); however, costs of exhibits to

motions are allowable as are costs associated with electronic copies of exhibits.  *See Haroco, Inc.*

*v. Am. Nat'l Bank & Trust Co of Chicago*, 38 F.3d 1429, 1441 (7th Cir. 1994) (costs for the

copying and collating of exhibits to summary judgment motion "fall squarely within th[e]

language [of 18 U.S.C. § 1920(4)]"); *OAO Alfa Bank*, 2006 WL 1313309, at *5 (awarding

copying costs for summary judgment exhibits and electronic copies of exhibits filed with the

Clerk).  Plaintiffs also object that the maximum allowable rate for these copies should be $0.10

per page since "it is well known that Kinkos in the D.C. area charges no more than 10 cents a

page." (Pls.' Mot. at 18-19.)  The Court finds the $0.12 per page rate requested by defendants to

be reasonable and therefore approves the $55.56 awarded as copying costs for exhibits to

defendants' motions.

With respect to pre-trial exhibits, defendants seek reimbursement for three sets of copies

of these exhibits at a rate of $477.46 per set, which includes photocopying costs of $0.14 per

page, as well as the cost of tabs and binders used for the exhibits and sales tax.  Because these

exhibits were "filed with the Clerk," they fall within the costs allowed by Local Civil Rule

54.1(d)(8).  Moreover, in light of the vendor's characterization of this copying job as a

"medium," rather than a "light," handling job, the Court finds the $0.14 per page rate charged to

have been reasonable, notwithstanding plaintiffs' objection that the copies should have been

charged at no more than $0.12 per page.  The three exhibit sets for which defendants seek

reimbursement include one set filed with the Clerk, one set provided to chambers at the Court's

request, and defendants' own set, all of which were reasonably obtained for use in the case and

therefore allowable.[7]  *See Intermedics, Inc. v. Ventritex, Inc.*, No. 90-20233, 1993 WL 515879, at

*7 (N.D. Cal. Dec. 2, 1993) (permitting defendant to recover cost of five sets of trial exhibits

where defendant was required to deliver three sets to the court and, of necessity, provided one

copy to opposing counsel and kept one copy), *aff'd*, 39 F.3d 1196 (Fed. Cir. 1994).  The parties

also dispute whether the cost of binders and tabs charged to defendants by their outside vendor

are allowable.  (*Compare* Pls.' Mot. at 16 (tabs and bindings constitute routine office overhead

and are not compensable), *with* Defs.' Cross-Mot. at 16 (noting that costs for these items were

charged by defendants' outside vendor, not defendants' law firm, and that they "were in fact

necessary at trial").)  Although there is a split of authority on this issue,[8] the Court is inclined to

---

[7]Defendants note that plaintiffs have already reimbursed them for a second set of exhibits provided to chambers at the Court's request and for plaintiffs' copy of the exhibits.  (Defs.' Cross-Mot. at 15; Defs.' Reply at 8.)

[8]*Compare Treaster v. HealthSouth Corp.*, No. 05-2061, 2007 WL 1019296, at *6 (D. Kan. Apr. 3, 2007) (finding that binders were not taxable because they "are not 'printing' or 'copies'"); *MEMC Elec. Materials v. Mitsubishi Materials*, No. 01-4925, 2004 WL 5361246, at *12 (N.D. Cal. Oct. 22, 2004) (local rule that authorized recovery for making hard copies of discovery documents "d[id] not authorize costs for tabs that are included on one of the invoices for copying costs"); and *Jack-Goods v. State Farm Mut. Auto. Ins. Co.*, No. 01-6536, 2004 WL 1672864, at *4 (N. D. Ill. July 23, 2004 (finding that exhibits to motion were properly taxable but tabs to exhibits were not), *with Doing Steel, Inc. v. Castle Constr. Corp.*, No. 02-1674, 2005 WL 563098, at *4 (N.D. Ill. Mar. 3, 2005) (cost of tabbing copied documents is recoverable because it is necessary to reproduce documents in a way that is organized and useful to the court); and *Chemetall GmbH v. ZR Energy, Inc.*, No. 99-4334, 2001 WL 1104604, at *33 (N.D. Ill. Sept. 18,

agree with plaintiffs and with the Clerk that these items are not allowable.  Defendants do not

contend that tabs and binders would be taxable if the costs for these items had been charged by

defendants' law firm.  (*See* Defs.' Cross-Mot. at 16 (distinguishing case cited by plaintiffs on the

ground that the binder and tab costs at issue were charged by a law firm, whereas those costs here

were imposed by a third-party vendor).)  It is difficult to see why the result should be any

different simply because the charges were imposed by an outside vendor.

Finally, defendants seek reimbursement for five sets of copies of their trial exhibits - -

one each for the Clerk, the Judge, the Judge's law clerk, the witness, and defendants.  (Defs.'

Cross-Mot. at 15-17.)  While 770 pages of these exhibits were introduced into evidence,

defendants concede that, at the Court's instruction, a total of 487 pages - - the transcripts of the

disciplinary and trusteeship hearings - - were not.  (*Id.* at 15-16.)  Plaintiffs assert that the

copying costs associated with these transcripts should not have been taxed, and the Court agrees.

As defendants acknowledge, prior to trial, the Court ruled that the transcripts would not be

entered into evidence.  (*See id.* at 16; Defs.' Reply at 9.)  Although portions of the transcripts

were read into the record at trial by both parties, the Court cannot conclude, in light of its earlier

ruling, that the five sets of transcript copies for which defendants seek reimbursement were

necessary in their entirety, and defendants have not established how many pages of transcripts

were actually used at trial.  Accordingly, the Court will approve the copying costs associated with

the 770 pages of exhibits introduced at trial (five sets), but not the transcript copying costs.  As

set forth above, the cost of binders and tabs also will not be allowed.

---

2001) (allowing "incidental charges for binding and tabs," which the Court found reasonably
necessary to organize voluminous information contained in trial notebooks).

The Court therefore finds that defendants are entitled to a total of $1,504.56 for exhibit costs.

### E.    Witness Travel and Subsistence Fees

The costs taxed by the Clerk include $7,795.50 in travel and subsistence costs incurred by defendants' witnesses.  (Dkt. # 175.)

Plaintiffs argue that subsistence costs are not recoverable under Local Civil Rule 54.1 and should not have been awarded to any of defendants' witnesses.  The Local Rule directs the Clerk to tax as costs "travel and subsistence costs pursuant to 28 U.S.C. § 1821(c), paid to each witness who testified at a hearing or trial."  LCvR 54.1(d)(10).  Plaintiffs contend that although the Rule authorizes "travel *and* subsistence costs," because it refers only to 28 U.S.C. § 1821(c) (concerning travel costs), and not to § 1821(d) (concerning subsistence costs), subsistence costs are not allowable.  (Pls.' Mot. at 20-21.)  This interpretation would render meaningless the Rule's express authorization of subsistence costs, and the Court declines to accept it.  Moreover, the Local Rule sets forth those costs the Clerk "shall tax" if "requested to do so in the bill of costs."  LCvR 54.1(d).  It does not purport to limit the Court's authority to award costs to the full extent permitted by Federal Rule of Civil Procedure 54(d), as those costs are defined in 28 U.S.C. § 1920 and, in the case of witness fees, § 1821.  *See Crawford Fitting Co.*, 482 U.S. at 441-42 (§ 1821 defines the witness fees specified in § 1920(3)); *Majeske v. City of Chicago*, 218 F.3d 816, 825-26 (7th Cir. 2000) ("Collectively, 28 U.S.C. §§ 1821 and 1920(3) authorize the award of costs to reimburse witnesses for their reasonable travel and lodging expenses."); LCvR 54.1(a) ("Costs shall be taxed as provided in [Fed. R. Civ. P. 54(d)].").  Subsistence fees are clearly authorized by 28 U.S.C. § 1821(d).

Plaintiffs also argue that travel and subsistence costs for three witnesses - - Richard

Barry, Marc Lawson, and Stephanie Zaiser - - should have been denied in their entirety because

of alleged violations of the Court's sequestration order, and that Barry's travel and subsistence

costs should have also have been denied because he appeared in the case as a party

representative.  Plaintiffs' allegations concerning violations of the sequestration order are based

on the fact that Barry shared meals with certain defense witnesses in advance of their testimony.

(Pls.' Mot. at 21-22.)  The Court addressed these allegations in ruling on plaintiff Johnson's

earlier motion for a new trial, finding that no actual violation of the order had been shown.  *See*

*Johnson v. Holway*, No. 05-2513, Order at 2-3 (D.D.C. Nov. 6, 2006) (declining to infer "from

the fact of Mr. Barry's contacts with witnesses that he disclosed to those witnesses information

about the prior testimony in violation of the Court's order").  The Court declines to revisit that

earlier ruling.  With respect to Barry's role as party representative, moreover, that role does not

preclude recovery of costs relating to his service as a witness in the case.  *Schmitz-Werke GmbH*

*& Co. v. Rockland Indus., Inc.*, 271 F. Supp. 2d 734, 736 (D. Md. 2003).  Because Barry testified

as a witness on April 7, his travel expenses for that trip to Washington, as well as one night's

lodging and one day's per diem, were properly allowed.  *See Hartford Fin. Servs. Group, Inc. v.*

*Cleveland Pub. Library*, No. 99-1701, 2007 WL 963320, at *10 (N.D. Ohio Mar. 28, 2007)

(allowing expenses associated with client representative's service as a witness but excluding

costs attributable to his service as a corporate representative); *Trammel v. BASF Corp.*, No. 99-

6897, 2002 WL 59114, at *6 (N.D. Ill. Jan. 14, 2002) (awarding airfare and lodging costs for

days on which witness testified but not for days on which he was present solely as a party

representative).

Plaintiffs raise a host of other objections to particular items taxed by the Clerk, but none

has merit.  The Court rejects plaintiffs' contention that David Bernard's cab fare between the

airport and the courthouse is not taxable because metrorail is more economical, *see McKesson*

*Info. Solutions, Inc. v. Bridge Med., Inc.*, No. 02-2669, 2007 WL 1139557, at \*2 (E.D. Cal. Apr.

17, 2007) (awarding witness fees, including taxi costs), and finds that defendants have produced

adequate documentation regarding the date of Bernard's airplane travel.  (Defs.' Cross-Mot. at

20-21 & Ex. 5.)  The Court also rejects plaintiffs' contention that $193.00 of Stephanie Zaiser's

airfare should have been disallowed.  Although Zaiser did change her flight, defendants have

demonstrated that the $193.00 charge was not a change fee but was a charge associated with the

higher cost of the different flight, which extended her stay in Washington until April 7 and thus

enabled her to be present for her testimony that day.  (Defs.' Cross-Mot. at 23.)  Finally, the

Court cannot agree that Jason Weyand should have been limited to one night's lodging and per

diem, or that defense witnesses located in Boston and Atlanta should have been required to make

day trips to Washington to testify rendering any overnight stay unnecessary.  Weyand made the

day-long trip from Pendleton, Oregon to Washington on April 4 so that he could be available to

testify on April 5, in the event that plaintiffs rested their case that day.  (Defs.' Cross-Mot. at 22-

23.)  Weyand ultimately testified on April 6 and returned to Oregon the following day.  (*Id.*)

Defendants' request that Weyand's three nights of lodging be reimbursed is not unreasonable,

given the uncertainty as to when Weyand would testify and the limited selection of flights

available to him.  *See Greene*, 183 F.R.D. at 450 (hotel costs "are properly taxable when there is

a good faith expectation that witnesses might be called").  Moreover, given the uncertainties

associated with air travel, the Court agrees that it was reasonable for defense witnesses located in

Boston and Atlanta to stay overnight in Washington the night before their testimony.[9]

The Court therefore finds that defendants are entitled to $7,795.10 in witness travel and subsistence costs.

## II.      Motion for a New Trial

In addition to objecting to the costs taxed by the Clerk of Court, plaintiff Johnson also seeks a new trial on the ground that defendant Barry violated the Court's sequestration order by meeting with other witnesses in the case before their testimony.[10]  (Johnson Mem. at 25.)  As noted, the Court previously rejected the identical argument in denying Johnson's earlier motion for a new trial in November 2006, *Johnson v. Holway*, No. 03-2513, Order at 2-3 (D.D.C. Nov. 6, 2006), and the Court declines to revisit the issue now, almost a full year later.

## CONCLUSION

For the foregoing reasons, plaintiffs' motions to retax will be granted in part and denied in part, defendants' cross-motion to retax will be denied, plaintiff Johnson's motion for a new trial will be denied, and costs will be taxed against plaintiffs in the amount of $17,762.22.

---

[9]The Court also agrees with defendants that two days of per diem were allowable for John Sabulis, even though only one night's lodging was allowable.  (*See* Pls.' Mot., Ex. 5 (showing a $48 per diem limit for the first *and* last day of travel).)

[10]Elsewhere in her motion, Johnson also asserts that defendant Holway "has acted in bad faith and has, since the trial, shown that NAGE had no interest in truly representing Local R3-77" (Johnson's Mem. at 2); however, she does seek a new trial on this basis.  (*Id.* (noting that "the Court case [cannot] be re-opened so that this evidence [regarding the filing by NAGE of a petition with the FLRA to rescind its certification to represent the bargaining unit employees at PBGC] can to used to change its decision").)

_____/s/_____
ELLEN SEGAL HUVELLE
United States District Judge

Date: October 31, 2007